UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
POSR A. POSR,

                        Plaintiff,

                                                                           10 Cv. 2551 (RPP)

  -against-

                                                                          **OPINION & ORDER**

P.O. UEBERACHER, POLICE DEPARTMENT
OF THE CITY OF NEW YORK, RAYMOND
KELLY, CITY OF NEW YORK, MICHAEL
BLOOMBERG,

                       Defendants.
---------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On September 22, 2011, Plaintiff Posr A. Posr, <u>pro se</u>, ("Posr" or "Plaintiff") filed a motion to compel discovery under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56(d) and (e). For the following reasons, Plaintiff's motion to compel is granted.

**I.    Background**

On March 4, 2010, Plaintiff filed a complaint ("Complaint") against the New York City Police Department ("NYPD"), NYPD Officer Peter Ueberacher[1] ("Ueberacher"), Police Commissioner Raymond Kelly ("Kelly"), the City of New York, Mayor Michael Bloomberg ("Bloomberg"), the State of New York, and Governor David Patterson ("Patterson"). The Complaint alleges that, at approximately 11:03 a.m. on Monday, March 9, 2009, Plaintiff, who is of African ancestry, was walking on 123rd Street, between Marcus Garvey Park West and Malcolm X Boulevard and carrying a red bag. (Compl. ¶¶ A, 5.) Officer Ueberacher approached Plaintiff and asked him where he had come from. (Id. ¶ 8.) Ueberacher then asked

---

[1] Officer Ueberacher's name was misspelled as "Ueberbacher" in the caption of the Complaint. (See Defs.' Statement of Undisputed Facts Pursuant to F.R.C.P. Rule 56.1, ECF No. 29 at 1, n.1.) The Court has corrected this misspelling.

Plaintiff for identification, and Plaintiff responded by asking if a crime had been committed. (Id. ¶¶ 11, 11.5.) Ueberacher told Plaintiff that he had seen Plaintiff put his bag down at 10 West 123rd Street and put something in the bag, and informed Plaintiff that there had been a lot of burglaries in the area, and that he was investigating a burglary. (Id. ¶¶ 12, 15, 17.) Plaintiff asked Ueberacher if he was free to go, to which Ueberacher responded "no." (Id. ¶¶ 20, 21.) Plaintiff then said, "if this were a white neighborhood, this wouldn't be happening," to which Ueberacher responded "do you want me to stop a white guy?" (Id. ¶¶ 22, 23.) Plaintiff replied that he did, and pointed out a white person. (Id. ¶¶ 24, 25.) Ueberacher refused to stop the white person that Plaintiff had pointed out, saying "but he has a clipboard." (Id. ¶ 26.) Plaintiff once again asked Ueberacher if he was free to leave. (Id. ¶ 27.) Plaintiff then asked to see Ueberacher's supervisor, and made a phone call to 911. (Id. ¶¶ 29, 29.5.) Within five minutes, four uniformed police officers arrived on the scene. (Id. ¶¶ 30, 34.) Again, Plaintiff asked if he was free to leave, and was told by one of the officers that he was not. (Id. ¶¶ 31, 32.) Soon thereafter, Ueberacher's supervisor arrived, and spoke briefly with Ueberacher. (Id. ¶¶ 33-35.) He then spoke with Plaintiff, and told Plaintiff he was free to leave. (Id. ¶¶ 35-37.)

In his Complaint, Posr alleges a number of federal law causes of action stemming from this encounter pursuant to 42 U.S.C. §§ 1981("section 1981") and 1983 ("section 1983"). Specifically, Plaintiff claims that he was discriminated against on the basis of his race in violation of section 1981, and that Defendants violated his right to be free from unreasonable seizures under the Fourth Amendment, his rights to due process and equal protection under the Fourteenth Amendment, and his right to be free from an assault on his dignity under the Ninth Amendment. (See Compl. ¶¶ 52.1-57.) The Complaint also contains a number of state law claims, brought under the New York State Constitution.

On November 15, 2010, Defendants NYPD, Ueberacher, Kelly, the City of New York, and Bloomberg filed an answer to the Complaint. On November 29, 2010, Defendants State of New York and Patterson moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff failed to submit opposition papers or otherwise respond to the motion. By endorsed letter dated February 9, 2011, the Court granted those Defendants' motion to dismiss and ordered that the action be closed.

On February 24, 2011, Plaintiff moved to re-open the case against Defendants NYPD, Ueberacher, Kelly, the City of New York, and Bloomberg (collectively, "Defendants"). By letter dated March 1, 2011, Defendants opposed that request and, alternatively, requested a briefing schedule for its summary judgment motion. The Court granted Plaintiff's request to re-open the case and endorsed Defendants' proposed briefing schedule.

On April 15, 2011, Defendants moved for summary judgment and attached an affidavit from Deputy Inspector Rodney Harrison, the commanding officer at the 28th Precinct, who attested to a recent spike in residential burglaries in the vicinity of Plaintiff's stop prior to March 9, 2009, based on his review of certain "NYPD records" including "crime statistics and documents regarding burglaries." (Decl. of Brian J. Farrar dated April 15, 2011, ECF No. 20, Ex. D ("Harrison Aff.")) On April 29, 2011, Plaintiff moved to compel the production of the underlying data and statistics referred to in Harrison's affidavit. Defendants initially sought a protective order prior to disclosing said information and the Court permitted Defendants to move for such an order on or before July 8, 2011. After further review, Defendants instead requested permission to withdraw certain portions of the summary judgment motion, including the April 15, 2011 Declaration of Brian J. Farrar. This request was granted, and Defendants withdrew their summary judgment motion with leave to file a revised version by July 22, 2011.

On July 22, 2011, Defendants submitted a revised motion for summary judgment pursuant to Fed. R. Civ. P. 56. Therein, Defendants moved for summary judgment on the grounds that: (1) Plaintiff has failed to state a cognizable section 1983 claim; (2) Defendant Ueberacher is entitled to qualified immunity; (3) Plaintiff has failed to state a claim for racial discrimination; (4) Defendants Kelly and Bloomberg had no personal involvement in the incident alleged in the Complaint; (5) Plaintiff has failed to state a <u>Monell</u> claim; (6) the NYPD is not a suable entity; and (7) the Court should decline to exercise jurisdiction over any remaining state law claims. (Defs.' Mem. in Supp. of their Mot. for Summ. J. dated July 22, 2011, ECF No. 27 ("Defs.' Summ. J. Mem.") at 3.)

Attached to the motion was an affidavit from Ueberacher, who attested to the events taking place on March 9, 2011.[2] Therein, Ueberacher states, in relevant part:

> On May [sic] 9, 2009 at approximately 11:00 a.m., I was on patrol in a marked police vehicle when I observed plaintiff, Posr A. Posr standing in the courtyard of 6 West 123rd Street in Manhattan. The front door of that location was open and I observed plaintiff placing unidentified objects into a red duffle bag. I had been advised by my command that there had been a recent spike in burglaries in that location. I was further advised that suspects committing these burglaries often strike during the midday hours and steal items that can easily be concealed in bags and knapsacks.

(Decl. of Brian J. Farrar dated July 22, 2011, ECF No. 28, Ex. C ("Ueberacher Aff.") ¶ 2.) After providing an account of his stop of Posr, Ueberacher states, "[w]hile I was on the radio, plaintiff dialed 911 from his personal cell phone and also requested that a sergeant respond to the scene." (<u>Id.</u> ¶ 5.)

On September 22, 2011, Posr submitted a motion to compel the production of (1) the source of Ueberacher's knowledge that there had been a recent spike in burglaries within the confines of the 28th precinct; (2) the source of Ueberacher's information that the suspects

---

[2] Defendants did not attach an affidavit from Deputy Inspector Harrison to their revised motion.

committing these burglaries would often strike during midday hours and steal items that could be easily concealed in bags and knapsacks; and (3) the audio-tape and SPRINT report of the 911 call made by Posr to the NYPD during the incident in question.  In the alternative, Posr moved to strike references to these subjects from the Defendants' motion for summary judgment.

On October 24, 2011, Defendants submitted a letter to the Court requesting that Plaintiff's motion be denied for failing to confer with Defendants prior to seeking judicial intervention with respect to discovery issues, as required by Local Rule 37.3, or in the alternative, that the motion be denied on substantive grounds.  Therein, Defendants assert that Posr's request for the audio-tape and SPRINT report of the 911 call made on March 9, 2009 is moot, as they provided him with the SPRINT report on or about October 14, 2011, and informed him that the audio recording of such call no longer exists.  With respect to the remaining request for documents concerning Officer Ueberacher's knowledge of prior burglaries in the area, Defendants contend that it should be denied on the grounds that it seeks documents that are immaterial to the main issues raised in Defendants' summary judgment motion.

On November 1, 2011, Posr submitted a sur-reply in response to Defendants' letter. Therein, Posr asserts that "the NYPD has intentionally and unlawfully destroyed the audio-tape of the 911 call." (Pl.'s Sur-Reply to Pl.'s Mot. to Compel 56.1 Docs., ECF No. 32 ("Pl.'s Sur-Reply") at 2.)  As evidence of this, Posr submitted a Freedom of Information Act ("FOIA") request dated March 12, 2009, requesting production of the audio-tape of the 911 call.  (Id., Ex. A.)  Posr requests that the court "compel the defendants to provide (1) the 911 tape, (2) the entire Sprint report, and (3) the statistics or documents upon which Ueberacher's 'high-crime-area' claims are ultimately based or dismiss the motion for summary judgment and subject the defendants to a negative inference charge during jury instructions for not providing." (Id. at 3.)

On November 5, 2011, the Court issued an Order deeming Plaintiff's motion a motion for discovery pursuant to Fed. R. Civ. P. 56(d), to obtain discovery "essential to justify its opposition," and ordering the Defendants to either supply the discovery or file opposition papers by Tuesday, November 15, 2011. (Order dated November 5, 2011, ECF No. 33.) On November 15, 2011, Defendants filed a memorandum of law in opposition to Plaintiff's motion to compel, arguing that the motion to compel be denied, and that their motion for summary judgment be granted on the grounds that (1) all documents that exist pertaining to the incident have already been disclosed to Plaintiff; (2) the other documents sought by Plaintiff are immaterial to the issues raised in the Defendants' summary judgment motion; and (3) the documents Plaintiff seeks to compel pertain only to Plaintiff's purported Monell claim.

## II.  Legal Standard

As an initial matter, the Court is mindful that Posr is proceeding pro se, and thus his submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995), and read to "raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

Under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e) states that, "[i]f a party failed to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact . . . or issue any other appropriate order." Furthermore, under Fed. R. Civ. P. 56(d)(3), "[i]f a nonmovant shows by affidavit or declaration

6

that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . issue any [] appropriate order."

### III. Discussion

#### A. Recording of Plaintiff's 911 Call

Defendants argue that Plaintiff's motion to compel discovery should be denied "because defendants have already provided to plaintiff all the documents in their possession regarding the specific incident alleged in the Complaint, namely the Stop and Frisk report and the SPRINT report." (Defs.' Mem. in Opp. to Pl.'s Mot. to Compel, ECF No. 35 ("Defs.' Opp.") at 3.) Additionally, Defendants claim that they "have already informed plaintiff on multiple occasions that the actual recording [of his alleged 911 call] no longer exists, as such recordings are only maintained for 180 days," and "[s]ince plaintiff did not commence the instant action until March 22, 2010, over one year after the alleged incident, the audio tapes of the purported 911 call were destroyed prior to the filing of this lawsuit." (Id.)

Defendants are ordered to provide Plaintiff with the entire SPRINT report of the incident if they have not already done so. Additionally, Plaintiff is entitled to the audio recording of his 911 call in order to "present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). Defendants contend that this recording no longer exists, but do not state in whose custody it would have been placed, nor do they assert that a search has been made but that the audio recording was not found. Nevertheless, Plaintiff has not provided adequate support for his contention that he "submitted a Freedom of Information demand for the audio-tape and the Sprint report [] on the NYPD on March 12, 2009 . . . two days after the 911 event . . . when the NYPD had the audio-tape and the full sprint report." (Pl.'s Sur-Reply at 2.) The only evidence submitted by Plaintiff in this regard is a completed "F.O.I.L. Unit, Legal Bureau" form dated

7

March 12, 2009, requesting audio-tape of a 911 call made from 123rd Street and Malcolm X Boulevard on March 10, 2009. (Pl.'s Sur-Reply, Ex. A.)  This form is neither time-stamped nor notarized to establish its receipt by the NYPD,[3] and it requests the audio-tape of a 911 call made March 10, 2009, the day *after* the alleged incident was to have taken place.  (See id.; Compl. ¶ A.)  Plaintiff presents no affidavit or other evidence that the NYPD actually received the FOIA request.  Without some further evidence indicating that the FOIA request was received by the NYPD and the place of such request, the Defendants may not be able to ascertain its present whereabouts.  Accordingly, the Court is unable to make a determination that the NYPD acted improperly in destroying the tape.

### B. Support for Officer Ueberacher's Claim that he had Been Advised of "Burglary Spikes" and "Easily Concealed Items"

Plaintiff argues that the statements made by Ueberacher in his affidavit regarding the "recent spike in burglaries" and "easily concealed" items, are not properly supported under Fed. R. Civ. P. 56(c). (Pl.'s Mem. in Supp. of Mot. to Compel, ECF No. 30 ("Pl.'s Mem.") at 6.) Plaintiff argues that Ueberacher did not make the statements in his affidavit based on personal knowledge, as required:

> While it may be true that def. U has personal knowledge that Inspector Harrison made def. U. "aware" and that Ins. Harrison "further informed" def. U. about "burglary spikes" and "easily concealed items", def. U. himself has no personal knowledge of the source of Ins. Harrison's information alleging "burglary spikes" or the alleged "easily concealed items" to which Def. U. refers, as required by F.RC.P. Rule 56[e] [sic].

(Id.)  Furthermore, Plaintiff argues that these statements would not be admissible in evidence, as they are hearsay.  (Id. at 9.)  In response, Defendants argue that the information sought by Plaintiff is "immaterial to issues raised in the summary judgment motion."

---

[3] In the top left-hand corner of the first page of the request, someone has written "P. Rivera received and would not time stamp."

Fed. R. Civ. P. 56(c)(4) requires that "an affidavit . . . used to support a motion [for summary judgment] must . . . set out facts that would be admissible in evidence . . . ."  In his affidavit, Ueberacher asserts that he "had been advised by his command that there had been a recent spike of burglaries in that location" and that "suspects committing these burglaries often strike during midday hours and steal items that can be easily concealed in bags and knapsacks." (Ueberacher Aff. ¶ 2.)  Ueberacher does not state when and where or by whom specifically he was advised of these facts.  Further, the statements made by Ueberacher's command are hearsay if offered for the truth of the matter they assert.  Nevertheless, if Ueberacher provides this additional information, these statements may be admissible at trial to explain Officer Ueberacher's state of mind, if the statements were made by an officer in Ueberacher's command to Ueberacher prior to and in reasonable proximity to his stop of Plaintiff.

As of now, Defendants have not submitted any evidence to support Ueberacher's assertion that he had indeed been advised about a "spike in burglaries" involving "easily concealed items" prior to March 9, 2009.  Defendant is required to provide this support pursuant to Fed. R. Civ. P. 56(c), and Plaintiff can challenge Uerbarcher's account by deposition of those individuals who allegedly provided the information.  Contrary to Defendants' contention, this information is material to the issues raised in their summary judgment motion regarding section 1983 and qualified immunity, as explained infra.

      *1.     Section 1983 Claim*

Defendants argue that Plaintiff has failed to state a valid claim under section 1983. (Defs.' Opp. at 4.)  As noted by Defendants in their brief, in order to justify a limited investigative stop, "a police officer must have reasonable suspicion based on articulable facts that the suspect 'is, has been, or is about to be engaged in criminal activity.'"  (Defs.' Summ. J.

9

Mem. at 8 (citing United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991).) Defendants cite Officer Ueberacher's awareness "of a recent spike of burglaries during the midday hours, [involving] the theft of small items that could easily be concealed in duffle bags," as support for the contention that "Officer Ueberacher clearly had reasonable suspicion to stop plaintiff and investigate," and thus "the 'stop' was reasonable in scope and duration." (Id. at 9- 10.) Defendants also cite Illinois v. Wardlow, 528 U.S. 119, 124-26 (2000), for the proposition that "officers may take into account relevant characteristics of a location, such as whether it is a high-crime area, in determining whether a Terry stop is warranted." (Defs.' Summ. J. Mem. at 8.)

Since Defendants rely on Ueberacher's knowledge of the spike in burglaries taking place during midday hours, and that Plaintiff was in a "high crime area," in defending Plaintiff's claims that he was illegally seized, the basis of Ueberacher's knowledge *is* in fact material to their motion for summary judgment. Thus, Defendants must provide some support for Ueberacher's claims that he was aware that West 123rd Street between Marcus Garvey Park West and Malcolm X Boulevard is a "high crime area," and that he had been informed "that there had been a recent spike of burglaries in that location" and that the burglaries often occurred "during the midday hours, [and involved] items that can easily be concealed in bags and knapsacks." (Ueberacher Aff. ¶ 2.)

    2.  *Qualified Immunity*

The standard for determining whether an officer is entitled to qualified immunity is "whether the right that was transgressed was clearly established." Groh v. Ramirez, 540 U.S. 551, 563 (2004) (citation and quotation omitted). An officer is not entitled to such immunity if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. Ueberacher's awareness of the recent spike in burglaries is material to this

determination, as it bears on the choice the officer made to stop the Defendant.  In fact, Defendants specifically rely on Ueberacher's knowledge of this information in arguing that he is entitled to qualified immunity:

> Therefore, given what Officer Ueberacher observed plaintiff doing, *together with his knowledge of a spike in burglaries in the area* and plaintiff's refusal to produce identification or provide a reasonable explanation for his presence outside the residence, it was objectively reasonable for Office Ueberacher to conclude that there was reasonable suspicion to stop and question plaintiff. Accordingly, Officer Ueberacher should be granted qualified immunity as a matter of law.

(Defs.' Summ. J. Mem. at 11 (emphasis added).)

Defendants assert that "it was objectively reasonable for Officer Ueberacher to conclude that there was reasonable suspicion to briefly stop and question plaintiff."  (Defs.' Opp. at 5.) While an affidavit from an officer in Ueberacher's command stating that he informed Ueberacher that the number of burglaries in that area had increased, and that these burglaries typically involved easily concealed items and took place during midday, would support Defendants' contention that Ueberacher's actions were objectively reasonable, an absence of such supporting evidence would indicate that Ueberacher's proffered reason for stopping Posr was pretextual, and that his actions were unreasonable.  Therefore, this information is material to Defendants motion for summary judgment with respect to the defense of qualified immunity.

**IV.     Conclusion**

The information sought by Plaintiff in his motion to compel is material to Defendants' pending summary judgment motion.  Furthermore, the SPRINT report of the incident and the audio recording of the 911 call made by Plaintiff could provide "facts essential to justify [his] opposition" under Fed. R. Civ. P. 56(d), and support for Ueberacher's assertions regarding "burglary spikes" and "easily concealed items" is required by Fed. R. Civ. P. 56(c)(4).

Therefore, Plaintiff's motion to compel is granted, and Defendants are ordered to provide Plaintiff with: (1) the entire SPRINT report and 911 call (or provide sufficient evidence that an appropriate search has been made and that they do not exist), and (2) evidentiary support for Ueberacher's assertion that prior to March 9, 2009, he had been advised by his command "that there had been a recent spike of burglaries" in the vicinity of West 123rd Street between Marcus Garvey Park West and Malcolm X Boulevard, and that the burglaries often occurred "during the midday hours, [and involved] items that can easily be concealed in bags and knapsacks." (Ueberacher Aff. ¶ 2.)

IT IS SO ORDERED.

Dated: New York, New York
       January 3, 2012

                                                  Robert P. Patterson, Jr.
                                                U.S.D.J.

**Copies of this Order were sent to:**

*Plaintiff, pro se*:
Posr A. Posr (by mail)
62 East 125th Street
Apartment 3G
New York, NY 10035

*Counsel for Defendants*:
Brian Jeremy Farrar (by fax)
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
Tel: (212)-341-0797
Fax: (212)-788-0367